**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSE LUIS CARCHI MARCA,** | **CIVIL ACTION** |
| **Petitioner,** | |
| **v.** | **NO. 26-cv-7874** |
| **J.L. JAMISON, et al.,** | |
| **Respondents.** | |

**MEMORANDUM OPINION**

**Pozos, J.** **November 10, 2026**

On October 14, 2026, Petitioner, through counsel, filed a Verified Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1) and Application for Issuance of Order to Show Cause (the "Application") (ECF No. 1-3) alleging that he was arrested and held in mandatory detention pursuant to 8 U.S.C. § 1225(b) in violation of the Third Circuit's decision in *Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287 (3d Cir. 2026). In response to this allegation, the Court directed Petitioner to immediately serve Respondents, and ordered Respondents to respond to the Petition within three (3) days as Petitioner requested. And then the case began to unravel. Petitioner's counsel failed to serve the Petition as directed, Petitioner's counsel only belatedly served the Petition via certified mail on October 22, 2026, and Respondents became aware of the Court's order to respond through a communication from the Clerk of Court. Respondents' response to the Petition further revealed that Petitioner was not, in fact, in custody subject to mandatory detention under 8 U.S.C. § 1225(b) – but that he had been offered, and declined, a bond hearing under 8 U.S.C. § 1226(a).

The case continued to deteriorate during a hearing on November 3, 2026. At the outset of the hearing, the Court asked counsel for Petitioner to confirm whether, in light of the information

provided by the Government, Petitioner continued to maintain that the Government was detaining Petitioner in violation of the Third Circuit's decision in *Buele Morocho*. Petitioner's counsel, Reuben Kerben, Esq., who verified the Petition, stated that Petitioner would stand on his arguments as stated in the Petition. But, when asked if he had reviewed the Government's response, Attorney Kerben admitted that he had not. And, after a recess to allow Attorney Kerben to review the Government's response, he conceded that the allegation that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b) was not true.

The Court proceeded to ask Petitioner's counsel how the allegation came to be in the Petition. None of Petitioner's counsel could provide a coherent explanation. Attorney Wayne Nguyen, Esq., Pennsylvania counsel for Petitioner, deferred to Mr. Kerben. Mr. Kerben, a New York attorney appearing remotely, stated that he did not have Petitioner's file with him and could not answer the question, speculated that the information may have been based on information contained in an intake packet after discussions with Petitioner's family, deferred to another previously undisclosed New York attorney, Parham Zahedi, Esq., who then joined the hearing remotely as well, and suggested that the Court may wish to directly question the Petitioner. After Petitioner was placed under oath and advised of his Fifth Amendment rights, Petitioner acknowledged that he had signed a Form I-286 (Notice of Custody Determination) declining his right to a bond hearing, and stated that he had not authorized anyone to say on his behalf that he had not been offered a bond hearing. Finally, Attorney Zahedi postulated that the allegation of Petitioner's mandatory detention may have been based on an "assumption" that, because the Government had employed mandatory detention prior to the Third Circuit's decision in *Buele Morocho*, and other courts outside the Third Circuit authorize mandatory detention under 8 U.S.C. § 1225(b), Petitioner must have been subject to mandatory detention in this case as well.

In reality, he was not. As it turns out, the fact pattern in this case is one on which the Court has previously ruled, and which is common in the District. *See Vakhtangadze v. Jamison*, No. 26-cv-6630, 2026 WL 2969613 (E.D. Pa. Oct. 2, 2026). Petitioner was offered (and declined) an individualized bond hearing under 8 U.S.C. § 1226(a) subsequent to his arrest, and the Petition will be denied because Petitioner has not exhausted his administrative remedies. Indeed, it was apparent to the Court during the hearing that Petitioner did not understand his right to a bond hearing, and only requested such a hearing after this Court ordered Petitioner's counsel to meet with Petitioner, explain his rights, and help Petitioner request such a hearing, if desired.

Since the hearing in this matter, it has come to the Court's attention that the Government has, in some cases, again taken the position that certain non-citizen detainees arrested in the interior of the United States are subject to mandatory detention under Section 1225(b). *See Garasov v. Jamison*, No. 26-8387, 2026 WL 3373206 (E.D. Pa. Nov. 6, 2026). As the United States has acknowledged in the *Garasov* case, this position conflicts with the Third Circuit's decision in *Buele Morocho*. *See id.* at *2. The Court also recognizes that other members of this Court have come to different conclusions regarding whether the fact pattern in this case would support habeas relief. Under these circumstances, the Court has carefully considered whether an "assumption" that Petitioner was detained pursuant to Section 1225(b), and ensuing representations to the Court, were consistent with Fed. R. Civ. P. 11(b). The Court, however, remains troubled by the apparent lack of an "inquiry reasonable under the circumstances" as required by Rule 11, both as a matter of professional responsibility and because of the impact that the lack of a reasonable inquiry had in delaying Petitioner's request for, and receipt of, the bond hearing to which he was entitled under Section 1226(a). Accordingly, the Court will also issue an order to show cause why the

representations made to the Court in this matter did not violate Fed. R. Civ. P. 11(b)(3) and/or Pa. R. P. C. 3.3(a)(1).

## I. RELEVANT FACTS

Petitioner is a citizen of Ecuador, who entered the United States without inspection in August 2023 near Lukeville, Arizona. *See* ECF No. 1, ¶ 18. Shortly after he entered the United States, Petitioner was issued a Notice to Appear by the Department of Homeland Security, charging Petitioner with inadmissibility under the Immigration and Nationality Act ("INA"). *See id.* Petitioner was then released on his own recognizance that same day. *See id.* According to Petitioner, in the years following his release, he "established a residence in Pennsylvania . . . and maintained employment to support himself and his family" and "has no known criminal history" in the United States. *See id.* ¶¶ 19-20. Petitioner has also been pursuing asylum protection, has a pending asylum application, and has obtained employment authorization in connection with his asylum application. *See id.* ¶ 20.

On October 9, 2026, Immigration and Customs Enforcement ("ICE") officers were conducting targeted surveillance when they observed an individual believed to be the target fugitive. *See* ECF No. 9 at 5. The ICE officers approached the individual who ICE identified as Petitioner "based on an interview and biometrics from prior arrest and immigration photographs." *See id.* ICE officers also determined that Petitioner, who was initially released from custody on his own recognizance in August 2023, failed to report any change of address to ICE, a condition of his release. *See id.* The ICE officers then took Petitioner into custody pursuant to a Warrant for Arrest of Alien dated October 9, 2026, though Petitioner maintains that ICE did not "present an administrative arrest warrant . . . at the time of his arrest." *See id.*; ECF No. 1, ¶ 21; *see also* ECF No. 9-4. ICE also executed and served a Notice of Custody Determination dated October 9, 2026

and signed by Petitioner. *See* ECF No. 9 at 5; *see also* ECF No. 9-1. Petitioner contends that "no individualized bond hearing has been afforded" to him. ECF No. 1, ¶ 22. The Notice of Custody Determination signed by Petitioner, however, reflects that Petitioner declined to exercise his right to request that an immigration judge review his custody determination. *See* ECF No. 9-1.

As described above, Petitioner's Petition rests on the basis (since withdrawn) that he was arrested and held in mandatory detention pursuant to 8 U.S.C. § 1225(b) in violation of the Third Circuit's decision in *Buele Morocho*. *See generally* ECF No. 1. Petitioner also maintains that his arrest was unconstitutional because ICE failed to obtain and serve a warrant prior to the arrest. *See id.* ¶¶ 21, 28-30, 55-57. Respondents maintain that Petitioner was detained under 8 U.S.C. § 1226(a) and that his detention is consistent with *Buele Morocho*. *See generally* ECF No. 9.

## II. PROCEDURAL HISTORY

Petitioner filed his Petition and Application on October 14, 2026. *See* ECF Nos. 1, 1-3. The next day, this Court issued an Order that Petitioner immediately serve the Petition on Respondents, that Respondents may not transfer Petitioner, and that Respondents respond to the Petition by October 19, 2026. *See* ECF No. 3. Respondents failed to respond to the Petitioner by October 19, 2026. Suspecting that Petitioner had not served Respondents, on October 23, 2026, the Court again issued an Order that Petitioner file proof of service through an appropriate ECF filing by October 28, 2026, or show cause why Petitioner failed to comply with our October 15, 2026 Order that Petitioner promptly serve the Petition. *See* ECF No. 5. The same day, Respondents filed a joint stipulation for an extension of time, reflecting that counsel for Respondents had indeed not yet been served and only became aware of this matter on October 22, 2026, through a communication from the Clerk of Court. *See* ECF No. 6. Consistent with the approved stipulation for extension of time, Respondents filed their Response in Opposition to the Petition on October 28, 2026. ECF

No. 9. On November 2, 2026, Petitioner filed proof of service, despite the Court's Order to do so by October 28, 2026. *See* ECF No. 15. The Court held a hearing on November 3, 2026, during which the Court heard the arguments of counsel and testimony from the Petitioner.

## III. LEGAL STANDARD

Federal courts may issue writs of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner has the burden of demonstrating that the challenged detention is unlawful. *See Ubaid v. Jamison*, No. 26-2681, 2026 WL 1346670, at *2 (E.D. Pa. May 14, 2026) (citing *Goins v. Brierly*, 464 F.2d 947, 949 (3d Cir. 1972) ("It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody.")).

## IV. DISCUSSION

The discussion which follows closely conforms to our prior decisions in *Vakhtangadze*, 2026 WL 2969613, *Zhuno-Livicura v. Jamison*, 26-cv-7255, 2026 WL 2936515 (E.D. Pa. Sept. 30, 2026), and *Sosa Salazar v. Jamison*, No. 26-cv-7608, 2026 WL 3153733 (E.D. Pa. Oct. 20, 2026). Because the Court has elaborated on its rationale at length, the Court will focus its discussion and avoid unnecessary repetition.

### A. Petitioner Has Failed to Exhaust His Administrative Remedies

"In general, [a petitioner] must exhaust administrative remedies before proceeding on a habeas petition brought under § 2241." *See Ubaid*, 2026 WL 1346670, at *3 (quoting *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam)); *see also Beradze v. Jamison,* No. 26-07111, 2026 WL 2859721, at *1 (E.D. Pa. Sept. 23, 2026) (citing *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (explaining the Third Circuit has "consistently applied an exhaustion requirement to claims brought under § 2241")). "Requiring exhaustion is 'particularly important in the

resolution of cases involving constitutional issues,' as here." *See Piatukho v. Jamison*, No. 26-6413, 2026 WL 2719267, at *3 (E.D. Pa. Sept. 15, 2026) (quoting *Republic Indus. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir. 1982) ("If the administrative tribunal decides a case on nonconstitutional grounds, the court may find it unnecessary to proceed with constitutional adjudication. In this way, exhaustion furthers the concept of judicial restraint . . . .")).

Here, it is undisputed that Petitioner was offered, and declined, a bond hearing. *See* ECF No. 9-1; *see also* Tr. of Hr'g on Petition for Writ of Habeas Corpus at 22:25-23:14; 24:5-17, Nov. 3, 2026. A bond hearing under Section 1226(a) fully meets constitutional requirements, for the reasons discussed in greater detail below, and would provide Petitioner with an individualized review of his detention. Nor does the Court find that requiring exhaustion would be futile, as it appears that the Petitioner subsequently requested a bond hearing which is scheduled for November 12, 2026.[1]

Accordingly, the Petition is denied for failure to exhaust Petitioner's administrative remedies.

### B. Petitioner is Not Entitled to Relief on Substantive Due Process Grounds (Count III)

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V, cl. 4.

In addition to the rights set forth in the Constitution, the Due Process Clause of the Fifth Amendment has also been interpreted to "specially protect[] those fundamental rights and liberties

[1] The Court notes that other courts have determined that review would be futile because individualized bond hearings are not available to noncitizens held at the Federal Detention Center in Philadelphia. *See, e.g.*, *De Los Santos Medina v. Jamison*, No. 26-6800, 2026 WL 2742071, at *4 (E.D. Pa. Sept. 16, 2026). That those hearings may occur elsewhere does not, however, render them futile.

which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if it were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations omitted). In evaluating whether a claimed unenumerated right meets this standard, courts "engage[] in a careful analysis of the history of the right at issue," and "[h]istorical inquiries of this nature are essential whenever we are asked to recognize a new component of the 'liberty' protected by the Due Process Clause . . ." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 238-39 (2022); *see also Glucksberg*, 521 U.S. at 711-16 (surveying "over 700 years" of "Anglo-American common-law tradition").

"Substantive due process analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" *Reno v. Flores*, 507 U.S. 292, 302 (1993) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)) (internal quotations omitted); *Glucksberg*, 521 U.S. at 720 (explaining necessity for the "utmost care" "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences" of the judiciary) (internal quotations and citation omitted).

In this case, Petitioner has not identified a substantive due process right which he seeks to vindicate, much less one that meets the *Glucksberg* test. ECF No. 1, ¶¶ 45-50, 61-63. Even if the Court were to construe the Petition more generously and find that Petitioner is asserting a non-enumerated substantive due process right to be free from re-detention during removal proceedings, absent a material change in his circumstances from those which existed at the time of his original release (as other petitioners before this Court have done, *see Vakhtangadze,* 2026 WL 2969613, at *4), his substantive due process argument still fails because "[d]etention during removal proceedings is a constitutionally permissible part of that process." *See Demore v. Kim*, 538 U.S.

510, 531 (2003) (analyzing, *inter alia*, *Zadvydas v. Davis*, 533 U.S. 678 (2001)). And Petitioner has not pointed to, nor is the Court aware of, any historical evidence that such an unenumerated right to be free from re-detention absent a material change in circumstance is so "'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if it were sacrificed.'" *Glucksberg*, 521 U.S. at 720-21. Indeed, in invoking *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), it appears that Petitioner has conflated substantive and procedural due process. *See Zhuno-Livicura*, 2026 WL 2936515, at * 2; *Beradze*, 2026 WL 2859721, at * 2 ("[I]t is unclear why Petitioner characterizes the due process protections recognized in *Jackson v. Indiana* as 'substantive.'") (citing *Foucha v. Louisiana*, 504 U.S. 71, 79-80 (1992) (characterizing *Jackson* as recognizing *procedural* protections, distinct from a discussion of substantive due process)).

Accordingly, the Court will turn to the issue of the process due to noncitizens, like Petitioner, who are subject to re-detention during the pendency of removal proceedings.

### C. A Bond Hearing Under Section 1226(a) Satisfies Procedural Due Process (Count II)

Petitioner's contention that he is entitled to relief on procedural due process grounds because "no individualized determination was made, either contemporaneously with or before ICE arrested [Petitioner] regarding whether he posed a flight risk or danger to the community," ECF No. 1, ¶¶ 58-60, appears to be premised on the faulty premise – since withdrawn – that he was subjected to mandatory detention under 8 U.S.C. § 1225(b). To the extent, however, that the Court construes the Petition as asserting that the availability of a bond hearing pursuant to 8 U.S.C. § 1226(a) is inadequate generally, or specifically for individuals who are subject to re-detention during the pendency of removal proceedings, the Court disagrees. The Court finds that a bond hearing within a reasonable time after the noncitizen's detention, of the type provided under

Section 1226(a) and its implementing regulations, is adequate under the Due Process Clause. This is particularly appropriate where the Petitioner does not appear to be in compliance with the terms of his release. *See, e.g.*, *Vakhtangadze*, 2026 WL 2969613, at *5; *Zhuno-Livicura*, 2026 WL 2936515, at *1; *Sosa Salazar*, 2026 WL 3153733, at *1.

When evaluating the process due to noncitizens under the Due Process Clause, courts consider:

> (1) [T]he private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Buele Morocho*, 189 F.4th at 306 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Turning first to the private interest factor, Petitioner has a clear interest in being free from physical restraint. *See*, *e.g.*, *Zadvydas*, 533 U.S. at 690; *Buele Morocho*, 189 F.4th at 306 (explaining "[f]reedom from imprisonment – from custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects," and recognizing the particular interests of "noncitizens who have lived in the United States for extended periods of time with no criminal records") (citations omitted). In the criminal context, the Supreme Court has recognized a particular reliance interest for those on conditional release who have complied with the terms of their release. *See*, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("The parolee has relied on at least an implicit promise that parole will be revoked if he fails to live up to the parole conditions.").

The Court also notes, however, that the Supreme Court has not required pre-deprivation notice or a hearing before revoking conditional release in criminal cases – despite the common liberty interest in avoiding restraint. *Id.* at 488 (finding "revocation hearing must be tendered

within a reasonable time after the parolee is taken into custody," rather than prior to renewed detention); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (finding, in the context of probation revocation, that "a parolee is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* . . ."); *O.F.C. v. Almodovar*, No. 25-9816, 2026 WL 74262, at *8 (S.D.N.Y. Jan. 9, 2026). It would be incongruous to find that the Due Process Clause requires greater protections, beyond those specified in Section 1226(a) and its implementing regulations, for noncitizens present in this country without legal authorization than it does for citizens with substantially similar liberty interests.

Further, while noncitizens have due process rights in immigration proceedings, "since *Mathews*, [the Supreme Court] has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522; *see also Reno*, 507 U.S. at 305-06 ("Thus, in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens.") (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (internal punctuation and citation omitted)).

Turning to the second factor, the risk of erroneous deprivation is also mitigated by the availability of an individualized bond hearing under Section 1226(a), and is consistent with the procedures required by *Morrissey*, discussed *supra*. *See also Beradze*, 2026 WL 2859721, at *2 ("Petitioner has administrative processes available to him in the form of an individualized bond hearing and the right to appeal a bond decision. These procedures protect against the risk of an erroneous deprivation of his liberty interest."). Accordingly, the Court finds that the availability of a post-arrest bond hearing under Section 1226(a) weighs against requiring the pre-arrest notice and hearing sought by Petitioner.

The final factor similarly favors Respondents. The Government has a "legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings[.]" *Id.* (quoting *Buele Morocho*, 2026 WL 2546223, at *10). Whether this generalized interest is applicable on the facts of Petitioner's case is not dispositive – that is a matter for an individualized determination through a bond hearing under Section 1226(a).

For these reasons, the Court finds that the *Mathews* factors weigh in favor of concluding that an individualized bond hearing, with appeal to the Board of Immigration Appeals, is constitutionally sufficient, and Petitioner's procedural due process rights can be protected by requiring Petitioner to exhaust his administrative remedies.

**D. Petitioner is Not Entitled to Relief for Alleged "Statutory and Regulatory Violations" Based on Warrantless Initial Arrest (Count I)**

To the extent that Petitioner contends that his detention was unlawful because it was effectuated without a warrant, this argument fails as well. The relevant question on habeas review "is whether Petitioner is presently 'in custody in violation of the Constitution or laws or treaties of the United States,' and not whether ICE's paperwork could have been more complete at the moment of arrest." *Par v. Jamison*, No. 26-3504, 2026 WL 1603299, at *4 (E.D. Pa. June 4, 2026); *see also Cocha v. Tsoukaris*, No. 26-9857, 2026 WL 2806733, at *3 (D.N.J. Sept. 18, 2026) ("The Court will not order Petitioner's release based on an alleged arrest defect, when Petitioner's custody is now lawful."); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952) (finding that irregularities in the manner of a criminal defendant's arrest do not preclude ensuing prosecution).

Despite Petitioner's initial allegations, it is undisputed that a warrant was issued for Petitioner's arrest, and that he is currently in custody pursuant to that warrant. Accordingly, his arguments fail in this respect as well. *See Vakhtangadze*, 2026 WL 2969613, at * 7; *Zhuno-Livicura*, 2026 WL 2936515, at * 3-4; *Sosa Salazar*, 2026 WL 3153733, at * 5.

**E. Mandatory Detention Under 8 U.S.C. § 1225(b) (Count IV)**

Finally, Count IV alleges that Petitioner was improperly subjected to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). If true, this would be a violation of *Buele Morocho*. Because this allegation is not true, however, and has been withdrawn by Petitioner, the Court will not tarry further. The Petition will be denied on that basis as well.

**F. Counsel's Representations to the Court and Order to Show Cause**

Under Fed. R. Civ. P. 11(b)(3), attorneys and parties who present filings to federal courts certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." "'Rule 11 requires only negligence, not bad faith' for a court to find that an attorney failed to meet their obligations under the rule." *Bunce v. Visual Tech. Innovations*, No. 23-cv-1740, 2026 WL 1082135, at *2 (E.D. Pa. Apr. 20, 2026) (quoting *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024)). "In other words, courts can sanction lawyers for what they should have known, not just what they knew." *Id.* (quoting *Wharton*, 95 F.4th at 148).

"Rule 11 also imposes an implied 'duty of candor,' which attorneys violate whenever they misrepresent the evidence supporting their claims. Thus, a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know—*or after reasonable investigation should have known*—are false or wholly unsupported." *Wharton*, 95 F.4th at 148 (quoting *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023)). The duty of candor extends beyond prohibiting outright lies; it also prohibits statements "that are literally true but actually misleading." *In re Taylor*, 655 F.3d 274, 283 (3d Cir. 2011). Furthermore, the duty of candor "means steering clear of 'half-truths, inconsistencies, mischaracterizations, exaggerations, omissions, evasions, and failures to correct

known misimpressions created by [the lawyers'] own conduct.'" *Wharton*, 95 F.4th at 148 (quoting *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 511 (4th Cir. 2018)).

In parallel, Pennsylvania Rule of Professional Conduct 3.3(a) provides: "A lawyer shall not knowingly . . . (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

Based on the testimony of Petitioner at the hearing on November 3, 2026, and the representations of counsel during that same hearing, it does not appear that the false assertions contained in the Petition and Application are attributable to the Petitioner. Indeed, the record and the Court's observations of the Petitioner strongly suggest that at least part of the problem in this case stemmed from a lack of communication between Petitioner and his counsel. During the hearing, despite Petitioner's acknowledgement that he signed a Form I-286 (Notice of Custody Determination) in which he waived his right to bond hearing, ECF No. 9-1, it was apparent that the Petitioner did not understand the nature of his rights to a hearing under Section 1226(a), or the nature of the instant habeas proceeding in relation to the parallel immigration process. While this confusion is understandable for a lay person, it was troubling that this confusion persisted despite the fact that Petitioner is represented by at least three different attorneys. For this reason, on November 3, 2026, after the hearing, the Court issued an Order requiring counsel to discuss the available administrative remedies with Petitioner, including his right to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a), and to assist Petitioner in filing the necessary documents to obtain an individualized bond hearing, to the extent that Petitioner may elect to seek one. *See* ECF No. 19. The Court further ordered Petitioner's counsel to certify compliance no later than close of business on November 6, 2026, and Petitioner's counsel filed a timely certification stating that a bond hearing has been scheduled for November 12, 2026. *See* ECF Nos. 19, 22.

The Court, however, has been unable to discern any cogent explanation for how the allegations contained in the Petition and Application came to be included in those documents, beyond the assumption of counsel that the Government must have detained Petitioner pursuant to 8 U.S.C. § 1225(b) and not 8 U.S.C. § 1226(a). Petitioner's counsel are, therefore, ordered to show cause, on or before November 24, 2026, why the allegations that Petitioner was detained pursuant to 8 U.S.C. § 1225(b) in violation of *Buele Morocho*, did not violate Rule 11(b)(3) and/or Pa. R. P. C. 3.3(a), and why the Court should not therefore impose sanctions upon Petitioner's counsel, including monetary sanctions, referral to the Bars of the Commonwealth of Pennsylvania and the State of New York, or such other sanctions as may be authorized by law, either under Rule 11, Rule 3.3, or pursuant to the Court's inherent authority. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

## V. CONCLUSION

For the foregoing reasons, the Petition is denied, and an appropriate Order will issue, along with an Order to Show Cause directed to Rueben S. Kerben, Esq., Parham Zahedi, Esq., and Wayne H. Nguyen, Esq.

/s/ Antonio M. Pozos
**ANTONIO M. POZOS, J.**